## Kirk v. Kirk's Executor.

(Decided November 24, 1915.)

### Appeal from Mason Circuit Court.

Wills—Devise to Three Sons—Absence of Issue—Survivor to Take.
—Where a will devised certain lands to the three sons of the testator and in the last clause provided that "the estates taken by my sons in the fourth and fifth clauses shall only be life estates, and in case they, or either of them, die without heirs of their bodies, immediately at their death, the land hereby willed for life shall go to my other living children, and at the time should any of my other children be dead leaving heirs of their body, said heirs shall take the land, or any interest therein, the same as their father would have done if living." Held, that the survivor of the three sons, the other two having died without issue, is invested with a fee simple title to the devised realty.

ALLAN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING and SLATTERY & REES for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

By this action, instituted in the court below, the appellant, Elizabeth M. Kirk, sought to recover of the appellee, Morris C. Kirk, as executor of the will of Morris C. Kirk, deceased, and devisee under the latter's will, 206 acres of land lying in Mason County, Kentucky, and the rental value thereof for the seven years next preceding the bringing of the action, aggregating in amount $21,000.00. Appellee filed a general demurrer to the petition, as amended, which the circuit court sustained, and appellant refusing to plead further, judgment was entered dismissing her petition. This appeal is prosecuted from that judgment.

The land in question was devised appellant's husband, Erasmus G. Kirk, deceased, by the will of his father, Richard Kirk. Erasmus G. Kirk died in 1906, testate, and appellant claims title to the land mentioned under his will, of which she is the sole devisee. The same land is in possession of and claimed by the appellee, Morris C. Kirk, under the will of his uncle, Morris C. Kirk, deceased, who died in 1914, and whose will, after bequeathing certain specific legacies to other relatives, devised the residue of his estate, including this land, to his nephew, the appellee, Morris C. Kirk.

It was alleged in the petition, as amended, that the 206-acre tract of land, together with a smaller tract of twenty-five acres, which her husband, Erasmus G. Kirk, acquired by purchase and conveyance several years prior to his death, and also devised her by his will, was conveyed by appellant to Morris C. Kirk, deceased, by deed of date June 8, 1906, whereby she intended to convey to him the twenty-five-acre tract of land at the agreed price of $2,000.00, which sum was then paid her in cash by Morris C. Kirk, but that by mistake of the draughtsman of the deed, or the fraud of the decedent, Morris C. Kirk, one of which facts, it was alleged, was true, though she did not know which was true, the instrument was made to falsely recite that it conveyed all the real estate owned by Erasmus G. Kirk at his death, whereas, she had, in fact, sold only the twenty-five-acre tract of land to him. It was further alleged in the petition that appellant did not learn of the mistake or fraud mentioned until within the ninety days next before the institution of the action. In the prayer of the petition it was asked that the contract of sale be rescinded and the deed cancelled insofar as it purported to convey the 206 acres of land, and that the instrument be so reformed as to make it convey simply the twenty-five acres of land sold the grantee and attempted to be conveyed him thereby.

Appellee's demurrer to the petition, as amended, is based on the grounds: (1) that the action is barred by the statute of limitations; (2) that the facts alleged in the petition and amendment, and furnished by the exhibits filed therewith, fail to state or manifest a cause of action. With respect to the first ground of demurrer it should be observed that the appellant's action was instituted eight years after the execution and delivery of the deed attacked by the petition, and it is insisted for appellee that while the statute allows the bringing of such an action within ten years next succeeding the commission of the alleged fraud or mistake sought to be corrected, it requires that it be done within five years next after its discovery; and further, that the averment of the petition that appellant did not discover the fraud or mistake until within ninety days of the filing of the petition is insufficient to meet the requirement of the statute, unless coupled with or followed by the additional averment that reasonable diligence on appellant's

part would not have enabled her to discover it sooner, which averment was not made.

This contention cannot be sustained. In Swineboard v. Wood, 123 Ky., 664, it was held that in an action for relief on the ground of fraud or mistake, the plaintiff need not anticipate a plea of the five or ten-year statute, and that if the defendant would rely upon limitation, it must be pleaded instead of being raised by demurrer. This decision was followed in Yager's Admr., etc. v. President, etc., of Bank of Kentucky, 125 Ky., 177, and has been approved in one or more later cases.

The second ground of demurrer is, however, fatal to the recovery sought by appellant. The facts alleged in the petition as amended, and exhibits filed therewith, show that appellant is not entitled to the relief prayed, as they manifest her want of title to the two hundred and six acres of land, or any part thereon, sued for, or to the rents alleged to have accrued therefrom. This is so because the land in question was received by her husband, Erasmus G. Kirk, under the will of his father, Richard Kirk, which devised him only a life estate therein, and as the interest the husband took in the land under the will ceased or ended with his death, he was without power to pass the title thereto to appellant by his will, as attempted by the devise therein made of it to her.

It is admitted in the petition that the two hundred and six acres of land was devised appellant's husband by the will of his father, Richard Kirk. The will of Richard Kirk appears to have been executed January 28, 1881, at which time the testator had three sons: Erasmus G., Morris C. and Bluford B. Kirk, all of whom were then unmarried. After providing in the first and second clauses of the will for the payment of his debts, and that his real and personal property be kept intact until that end was accomplished, the testator therein disposed of his real estate as follows:

"*Third.*—After my debts are paid, I will and bequeath to my wife, Angeline Kirk, during her natural life, my home farm containing about 229 acres and known as the Nathaniel Kirk and Garrett Applegate land, less about 80 acres of it—the part willed to me by my father, Richard Kirk, Senior, on my paying for it, which is hereinafter willed to my son, Bluford B. Kirk.

"*Fourth.*—After my debts are paid as aforesaid, I will and bequeath to my sons, Erasmus G. and Morris C. Kirk, subject to the condition hereinafter specified, the two tracts of land known as the 'dowry tract,' in which they already own an interest, and the tract of land deeded to me by Robert Downing, containing in both tracts about 268 acres, more or less.

"*Fifth.*—After my debts are paid as aforesaid, I will and bequeath to my son, Bluford B. Kirk, the 80 acres, more or less, excepted from the home farm of 229 acres, more or less; and, also, the remainder of the 229 acres called the home farm, after my wife's life estate ceases by her death.

"*Sixth.*—The estate taken by my sons in the fourth and fifth clauses of this my will shall only be life estates; and in case they or either of them die, without heirs of their bodies, immediately at their death, the land hereby willed them for life shall go to my other living children and at the time should any of my other children be dead leaving heirs of their body, such heirs shall take the land, or an interest therein, the same as their father would have done if living."

March 14, 1883, Richard Kirk made the following codicil to his will:

"*Codicil.*—My son, Bluford B. Kirk, having departed this life, I make this codicil, not changing my foregoing will in any way—merely making a division of the land willed to my said deceased son, to-wit: When they are entitled to it under my will I bequeath to my son, Morris C. Kirk, all the land willed to my deceased son on the east side of the road and to my son, Erasmus G. Kirk, all the land willed to my deceased son on the west side of the county road, except the tenement occupied by Wash Lyon and half-acre of land therewith, which I bequeath to my son, Morris C. Kirk. In this division I require my son, Morris C., to relinquish to my son, Erasmus G., the 2-13 that he owns individually in the 'dowry' on the westside of said road; and if he fails or refuses to do so then I will enough of the land on the east side of the road to make it up. There is some woods on the east side of the road, and my son, Erasmus, is always to have his stove wood out of the dower or rough part of the timber therein."

Richard Kirk died in 1893 and shortly thereafter his will and codicil were duly probated. He was survived

by two of his sons, Erasmus G. Kirk and Morris C. Kirk. Erasmus G. Kirk shortly thereafter married the appellant and died in 1906, without issue. His brother, Morris C. Kirk survived him, but died in 1914, without issue.

If the latter, as the last survivor of the sons of Richard Kirk, upon the death of Erasmus G. Kirk, took under the sixth clause of his father's will a fee simple title to the land which Erasmus had received under the father's will, it is clear that on June 8, 1906, when appellant executed to him the deed here attempted to be reformed, he already held the fee simple title to all of the land, exclusive of the twenty-five acres, the deed purported to convey him, in view of which appellant is estopped to complain that the two hundred and six acres was included in the conveyance made by the deed. This being true, there can be no just complaint from the appellant that the $2,000.00 then paid her by Morris C. Kirk was an inadequate price for the twenty-five acres of land, which was all the land he got by the conveyance; indeed, the petition does not so allege.

The only question remaining to be determined is, whether, in the conclusion expressed, we have given the correct meaning to Richard Kirk's will. Fortunately, we have as a guide a previous construction given the will by this court in Smoot v. Kirk, 31 R., 1081. The case was decided after the death of Erasmus G. Kirk and while Morris C. Kirk was still living, and the action seems to have grown out of the refusal of a purchaser of a part of the land which had been directly devised Morris by the will of his father, to accept a deed Morris tendered him therefor; his objection being that Morris, though the sole survivor of the sons of Richard Kirk, was unable to convey him a fee simple title. In the opinion it is said:

"Richard Kirk by his will devised certain lands to his three sons. Two of the sons have since died without issue. The third is living but has no issue. The question for decision in this case is the nature of the estate taken by the three sons, and particularly by the last survivor, appellee. The question arises under the sixth clause of the will, which reads as follows:

" 'The estates taken by my sons in the fourth and fifth clauses of this, my last will, shall only be life estates, and in case they, or either of them, die without

heirs of their bodies, immediately at their death, the land hereby willed for life shall go to my other living children, and at the time should any of my other children be dead leaving heirs of their body, said heirs shall take the land or any interest therein, the same as their father would have done if living.'

."It is claimed that appellee has only a life estate in the land while the latter claims the fee. The testamentary clause would have created a fee simple estate but for the sixth clause quoted above, and there would be less trouble in construing it but for the statement contained in it that life estates only are given to his three sons. Technical terms are to receive their technical meaning ordinarily in the construction of documents. But, if it appears from the context that the draftsman of the instrument misemployed technical terms, there is no sense in giving them technical meaning, when to do so destroys the intent otherwise clearly manifested in the instrument, as it is the latter that is invariably to control. If the words 'life estates' be omitted from the paragraph, as misdescription of the estate specifically and actually created, it will be seen that the testator intended that his sons were to have defeasible fees, for remaindermen are not provided. The devise of the fee to be defeated contingently is, in no sense, a life estate as that term is used in law. The testator had devised specifically to his sons certain lands. Without anything else being said they would have taken their lands in fee. But it was the evident purpose of the testator to continue the land in his own blood so far as that was practicable. The thought occurring that some of them might die without issue, provision was made that the land devised to such one should go to the surviving brothers, or in the event that one of them had previously died, but leaving issue, that his issue should stand in his place, as to the portion devised to the issueless son. But if any one of the sons died leaving issue there is no devise over, but such son of the testator then would have taken the fee, the contingency upon which it was to be divested not having happened. He could have disposed of it by will, or by sale or gift. When two of the three sons had died without issue the third took the whole by the terms of the will, but not as remainderman. As to such final survivor the condition could never arise by which if he died without issue the terms of the will could be complied with, to-

wit: That his two brothers or their issue or the survivor of them could take. We can not presume that the testator meant for the title to lapse or revert. The only condition that he contemplated as the one upon which the fee previously defeated should be divested was that one or two of his sons might die without issue. In that event the whole of the estate must of necessity go to the survivor, as no one else was provided in the instrument to take from the survivor. We conclude that Maurice C. Kirk, the survivor of the three sons, the other two having died without issue, is invested with the fee simple of the whole of the devised realty. Such was the judgment below and it is affirmed.''

As under the will of Richard Kirk the death of his two sons, Bluford and Erasmus, without issue, vested in the testator's third son and their brother, Morris C. Kirk, as sole survivor, an absolute or fee simple title to the lands it devised them, and the title thus derived by Morris C. Kirk to the land in controversy was devised by his will to his nephew, the appellee, Morris C. Kirk, appellant's claim thereto is wholly without merit: and if not entitled to the two hundred and six acres of land, no benefit can result to her from a reformation of the deed of June 8, 1906, executed by her to Morris C. Kirk, deceased.

Judgment affirmed.